24 So.2d 447

### STEPHENS v. STEPHENS.
### 1 Div. 521.

Court of Appeals of Alabama.
Nov. 20, 1945.

Rehearing Denied Dec. 18, 1945.

J. D. Ratcliffe and Barnett, Bugg & Lee, all of Monroeville, for appellee.

C. L. Hybart and R. L. Jones, both of Monroeville, for appellant.

HARWOOD, Judge.

Habeas corpus proceedings were instituted on 15 June 1945 in the Probate Court of Monroe County, Alabama, by Grace Stephens, mother of Sallye Marilyn Stephens, an 18 months old child, seeking to recover the custody of the child from Charlie Stephens, the paternal grandfather. From an order and judgment of that court entered 11 July 1945 denying the petition, awarding the custody of the child to Charlie Stephens, and taxing the costs of the proceedings against petitioner, appellant here, this appeal was perfected.

242

Appellant and Charles Stephens, son of the appellee, were married in Lee County, Alabama, on 7 August 1943. The appellant was at the time pregnant. Prior to their marriage, but after the conception of the child, appellant left Tuskegee at the close of school and went to Jacksonville, Florida, to her mother's home. She returned to Alabama on 7 August 1943, and was met in Opelika by Charles and they were married. Immediately after the marriage Charles told her he could not find her a place to live, so she went to stay with a friend who lived near Atlanta, Georgia. Charles came to visit her for a short while during her stay in Georgia prior to the birth of the child. During this visit she requested then that he find a place for her and the baby in Tuskegee, but he made it clear he did not want her in Tuskegee with a baby born so soon after their marriage, and further told her that he intended to divorce her after the arrival of the child.

The baby was born on 1 January 1944. Charles visited the hospital when the baby was five days old. According to appellant his chief topic of conversation during this visit was obtaining a divorce. Concerning the child Charles' idea first was for each to alternately keep it for six-month periods, but appellant did not think this fair to the child. Charles then said he had talked to his father and Lee Stephens, his father's wife, and they had agreed to keep the child until it was one year old. Appellant testified she consented to this arrangement with the understanding she could get the child after a year. Certainly a portion of a letter dated 17 October 1944 from Charles to appellant is corroborative of appellant's assertion of such an understanding. This portion of the letter reads:

"Now in answer to your last question as to whether I had informed Dad and Lee that you were to get Marilyn at the end of a year. Frankly, I have not. My contract with my father and Lee is to give the special attention outlined above to Marilyn and no time limit was placed upon it. That could be taken care of later."

Charles took the baby from the hospital when it was two or three weeks old and carried it to his father's home.

Thereafter appellant worked in Norfolk, Virginia, awhile, took a course in library science in Durham, North Carolina, for ten weeks, taught in Wilson, North Carolina, and at present is an assistant librarian in the negro division of the City Library at Winston-Salem, North Carolina, for which she receives a salary of $110 per month.

On 22 November 1944, a decree was tendered by the Circuit Court in Macon County, Alabama, divorcing the appellant and Charles Stephens, pursuant to a bill filed by Charles against appellant alleging abandonment as the grounds of divorce. Appellant claims she did not defend this divorce because financially unable to do so.

In September 1944, appellant visited in the Monroe County, Alabama, home of Charlie Stephens, the appellee, and was there again at the time of her ex husband's funeral. She did not take over the management of the child during these visits. Appellant also wanted to visit the Charlie Stephens home again in December 1944, but Lee Stephens wrote that she intended visiting in Mississippi during time of the contemplated visit and would have the child with her.

Appellant is now living with her sister and brother-in-law in Winston-Salem. The brother-in-law is a negro physician in that city and according to appellant has a good practice, and is desirous that she and her child make their home with him and appellant's sister. The brother-in-law himself testified by deposition that he has known appellant for 12 years, and in his opinion she is a fit person to have the custody of her child, and would properly care for the child. C. J. Hawkins, a negro minister of Wilson, North Carolina, testified by deposition to appellant's general reputation in Wilson, during the year she taught there was good, and in the opinion of this witness appellant is fully capable of caring for her child as she did well in her job as a teacher and in her work with smaller children.

Evidence for the appellee shows that Charles Stephens brought the child to his father's (appellee's) home when it was two or three weeks old, and told his father that appellant did not want the child. Appellee and his wife Lee agreed to take and care for the child. No criticism can be made of the treatment accorded the child by this couple. Charlie, the grandfather, had the public health nurse visit his home and instruct them as to its proper care, and has apparently done everything conducive to its welfare. Lee Stephens, the step grandmother, has largely had the burden of its care. According to Charlie he and Lee were married five or six years ago, though Lee testified they were married eight or nine years ago. Lee testified she and

Charlie had had one child since their marriage, but it had died. Harriet Stephens a nineteen year old daughter of Charlie by a previous marriage, and who has lived with Charlie and Lee continuously since their marriage testified Lee had never had a child since her marriage to Charlie. Lee admitted on cross examination she had had an illegitimate child prior to her marriage, that this child is about fifteen years old and she does not know who its father is. This child is now in Mississippi.

Charlie Stephens is about fifty years old. He has farmed all his life and now owns a seventy-five acre unencumbered farm in Monroe County. By a prior marriage he has seven living children. His household now consists of five, including the child the subject of this suit. Charlie Stephens has undoubtedly been an industrious and well behaved person during his entire life. Numerous citizens of his community testified to his good character and ability to care for the child. Both Charlie and Lee express their love for the child Sallye Marilyn, and their great desire to keep possession of her.

Charles Stephens, father of the infant Sallye Marilyn, was killed in military service on 23 March 1944, and as a result his child acquired an estate of $2500. The appellee was appointed guardian of Sallye Marilyn 6 June 1945.

It appears that all of the essential facts bearing on this case have been fully developed by able counsel on both sides. These facts as they appear from the record have been rather extensively set out in this opinion because of the utmost importance of the facts and their effect upon the legal principles involved in this type of case.

■ The harsh doctrine of the common law that the father was entitled to the custody of the children as against all the world, regardless of his fitness, has long since been extirpated from our jurisprudence. While even today in fairly current decisions we find expressions to the effect that the custody of a legitimate child belongs primarily to the father, such doctrine has been so enfeebled by the humanitarian development of the law in this field as now to be little more than a formalism. It is now too well settled to even require citation that the controlling factor in child custody cases is the present and future welfare of the child.

From the facts it appears that the mother of this child is equally suitable as the grandfather and step grandmother to properly care for this child. Its future welfare would probably be brighter with its mother than elsewhere.

■■ Other things being equal, the love and affection resulting from natural parental instinct dictates that the custodial rights over a child is prima facie in the parents. Stoddard v. Bruner, 217 Ala. 207, 115 So. 252; Campbell v. Sowell, 230 Ala. 109, 159 So. 813. Recognizing a basic natural truth the law presumes that a child of tender years will be best cared for by its mother, even though she be not free from fault in bringing on the separation. Stoddard v. Bruner, supra; Hawkins v. Hawkins, 219 Ala. 31, 121 So. 92; McLellan v. McLellan, 220 Ala. 376, 125 So. 225; McLellan v. McLellan, 221 Ala. 363, 129 So. 1. This presumption becomes more compelling where the child of tender years is a female. Butler v. Butler, 222 Ala. 684, 134 So. 129. There is no substitute for mother love.

■■ The fact that letters of guardianship over the child in this case have been issued to the appellee is of no persuasive import in a suit of this nature. Fletcher v. Preston et al., 226 Ala. 665, 148 So. 137. Nor do we feel that because appellant failed to institute proceedings seeking to gain custody of her child for some six months after the expiration of the one year for which she contends that she consented to relinquish the custody of her child, or the further fact that the child had come into $2500 upon its father's death to be facts that should particularly influence the decision in this case.

■ We feel that the trial court failed to give the consideration to which they must be entitled the facts that Sallye Marilyn Stephens was a female child of only 18 months of age, that the mother is financially able, and in other respects competent and proper to rear and care for her. As mother of the child the priority of her claim to the custody of her child should be recognized.

The judgment of the court will therefore be reversed, and one will be entered here granting the custody of Sallye Marilyn Stephens to its mother, Grace Stephens, the appellant.

Reversed and rendered.